**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | : | |
| | : | |
| | : | |
| **V.** | : | **CRIMINAL NUMBER 2:21-CR-203** |
| | : | |
| | : | |
| **TERRELL ASHBY** | : | |

**DEFENDANT'S MEMORANDUM IN AID OF SENTENCING
AND REQUEST FOR A DOWNWARD VARIANCE**

Terrell Ashby appears before this Court having pleaded guilty to the four counts of the indictment against him: one count of cyberstalking resulting in serious bodily injury, in violation of 18 U.S.C. §§ 2261A(2)(B) and 2261(b)(3); one count of cyberstalking, in violation of 18 U.S.C. § 2261A(2)(B), and two counts of extortion, in violation of 18 U.S.C. § 875(d). Prior to his guilty plea in this case, Mr. Ashby has never before been convicted of any offense, of any degree, as either a juvenile or adult. Likewise, he has never been arrested for any conduct other than this case. Mr. Ashby's offense conduct occurred four or more years ago, when he was 22 years old or younger. In the years since his arrest, Mr. Ashby his been a model citizen. While on home confinement, Mr. Ashby he has been nothing but a law-abiding and productive member of society. He now has a steady girlfriend and a full-time job, both of which he views with an eye toward the long term. After lengthy self-reflection and maturation, Mr. Ashby is deeply ashamed of and remorseful for the harm he caused to the victims in this case, and he looks forward to the opportunity to apologize face-to-face to any victims in attendance at his sentencing hearing. Having spared those victims from having to testify or publicly re-live their experiences at a trial, Mr. Ashby accepted responsibility for his actions by pleading guilty.

Mr. Ashby respectfully requests this Court consider all arguments and information provided herein and sentence him to a term of imprisonment below the advisory guideline range. A sentence reflecting a downward variance is sufficient but not greater than necessary to meet the statutory considerations of 18 U.S.C. § 3553 and therefore appropriate in this case.

## I. FACTUAL BACKGROUND AND PROCEDURAL HISTORY

Against the backdrop of the beginning of the COVID-19 pandemic in 2020, Mr. Ashby committed the offenses to which he has pleaded guilty. He was arrested December 18, 2020, and on May 13, 2021, was indicted by a grand jury sitting in the Eastern District of Pennsylvania. In March, 2023, undersigned counsel was appointed to represent Mr. Ashby, replacing prior counsel. On April 18, 2024, Mr. Ashby pleaded guilty to the indictment. Mr. Ashby is remorseful, accepts full responsibility, and does not seek to make excuses for his conduct.

## II. THE SENTENCING GUIDELINES RANGE

As correctly stated in the presentence investigation report (PSR), USSG § 2A6.2(a) is 18. PSR ¶ 36, 42. Because the defendant's conduct includes more than one aggravating factor identified in USSG §2A6.2(b)(1), the offense level is increased by four. PSR ¶ 37. The offense level is again increased pursuant to the multiple count provisions of USSG § 3D1.4. PSR ¶ 50. Mr. Ashby has no previous criminal history and meets the criteria for "Zero Point Offenders" set forth in USSG § 4C1.1(a). Therefore, his offense level is reduced by two. PSR ¶ 52. Mr. Ashby has clearly demonstrated acceptance of responsibility; therefore, his offense level is again reduced by two. PSR ¶ 53. The resultant total offense level is 20. PSR ¶ 54. As Mr. Ashby has no criminal history, his criminal history score is "0" and his criminal history category is "I". PSR ¶ 57-58.

### III. APPLICATION OF THE 18 USC § 3553 STATUTORY FACTORS WARRANTS A DOWNWARD VARIANCE

The Court must of course consider all of the factors identified in 18 U.S.C. § 3553(a) and impose a sentence that is "sufficient, but not greater than necessary" to satisfy the purposes of sentencing. 18 U.S.C. § 3553(a)(1). In this case, a sentence below the advisory guideline range meets these criteria. The factors the Court must consider include: (1) the nature and circumstances of the offense and the history and characteristics of the defendant; (2) the need for the sentence imposed to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense; (3) the need to afford adequate deterrence to criminal conduct and to protect the public from further crimes of the defendant; (4) the need to provide the defendant with educational or vocational training, medical care, or other correctional treatment in the most effective manner; (5) the guidelines and policy statements issued by the Sentencing Commission; (6) the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct; and (7) the need to provide restitution to any victims of the offense. *Id.*

**A. The Nature and Circumstances of the Offense and History and Characteristics of Terrell Ashby**

The crimes Mr. Ashby committed are unquestionably serious. Mr. Ashby's conduct leading to his arrest and this prosecution was deplorable and inexcusable. Mr. Ashby acknowledges as much, and feels profound remorse for his behavior.

Terrell Ashby is not a violent person and does not have any history of drug use, abuse or other drug-related offenses. In fact, he has never before been arrested, much less convicted of any criminal offense. Likewise, he does not now own – and has never owned or possessed – any firearms. The Court should weigh those facts heavily. The Court should also give great

consideration to Terrell Ashby's age. At the time of his offense conduct he was, at oldest, 22 years old. The Sentencing Guidelines have long included a policy statement regarding consideration of a defendant's age. U.S.S.G. § 5H1.1. Earlier this year, the U.S. Sentencing Commission voted to adopt an amendment to that policy statement that extends that statement. Unless Congress enacts a law to modify or disapprove of the change, it will take effect in November, and will establish that a defendant's youthfulness, by itself, may be a basis for a downward departure. The amendment states, in relevant part:

> "A downward departure also may be warranted due to the defendant's youthfulness at the time of the offense or prior offenses. Certain risk factors may affect a youthful individual's development into the mid-20's and contribute to involvement in criminal justice systems, including environment, adverse childhood experiences, substance use, lack of educational opportunities, and familial relationships. In addition, youthful individuals generally are more impulsive, risk-seeking, and susceptible to outside influence as their brains continue to develop into young adulthood. Youthful individuals also are more amenable to rehabilitation.
>
> The age-crime curve, one of the most consistent findings in criminology, demonstrates that criminal behavior tends to decrease with age. Age-appropriate interventions and other protective factors may promote desistance from crime. Accordingly, in an appropriate case, the court may consider whether a form of punishment other than imprisonment might be sufficient to meet the purposes of sentencing."[1]

Mr. Ashby was, at the time of his offenses, a very young man. As the Sentencing Commission's adoptive amendment suggests, the Court should consider this factor heavily in fashioning a sentence, and the Defendant suggests it militates in favor of a downward variance.

In the time since his offenses, he has matured significantly. During the time of his offenses, and in the nearly four years since, Mr. Ashby has resided with his mother, Yulonda. At the time of his arrest, Yulonda told the agents Terrell has been unemployed for years and refused to contribute to the household. PSR ¶ 80. Since then, and since undersigned counsel overtook

---

[1] U.S. Sentencing Commission, April 17, 2024. "Amendments to the Sentencing Guidelines (Preliminary)". Retrieved September 19, 2024 from https://www.ussc.gov/sites/default/files/pdf/amendment-process/reader-friendly-amendments/202404_prelim-rf.pdf

4

his representation, Terrell has matured greatly. Once permitted to do so by pretrial services, Terrell set about finding a job. PSR ¶ 77-78. He worked at a senior living facility, then an independent living retirement community, and since March, 2024, for a Best Western Hotel. PSR ¶ 75-76.  The hotel is being remodeled and rebranded as a Hilton property, and Terrell has taken on as much work as they are willing to give him, often working 6 or 7 days per week, at this and other properties. Additionally, he met a girlfriend, and the two have been in a supportive relationship for 13 months.  As noted in the PSR, Terrell's mother has witnessed a significant increase in his maturity and responsibility in this time. PSR ¶ 80.

    B.   The Need for the Sentence Imposed to Promote Certain Statutory Objectives

*(1) To reflect the seriousness of the offense, promote respect for the law, and provide just punishment for the offense.*

Mr. Ashby freely and readily appreciates the seriousness of this offense and is ashamed and genuinely remorseful his behavior, and for any harm it caused the victims.  For his youthful, horribly misguided decisions, he will forever be a convicted felon and will face all the severe collateral consequences that come with that designation.  As such, his conviction is, in and of itself, a significant punishment given his lack of criminal history, age, and employment goals.

Additionally, Mr. Ashby has also already experienced significant restrictions on his liberty in the form of twelve days spent in custody from his arrest until his release with electronic monitoring, and then highly restrictive Pretrial Services conditions, including travel limitations and a complete prohibition on computer or internet access.  Mr. Ashby has been fully compliant and has not presented a single issue to pretrial services.  In other words, Mr. Ashby's supervision conditions thus far have already reflected the seriousness of his offenses and promoted respect for the law. Any sentence the Court imposes will have the same effect. Even a probationary sentence with home detention would more greatly restrict his liberty to such a degree that this

statutory sentencing factor would be satisfied. *See Gall v. United States*, 552 U.S. 38, 48-49 (2007) (finding that even standard conditions of probation by themselves substantially restrict person's liberty).

>   (2) *To afford adequate deterrence to criminal conduct;*
>
>   and
>
>   (3) *To protect the public from further crimes of the defendant.*

Similarly, Mr. Ashby's prosecution and conviction for this case in the serious venue of federal court, along with the risk of a serving the significant prison term that could be imposed, provides a more than adequate general deterrent to other, similarly situated individuals. Moreover, it is well-established that the *certainty* of punishment, not the *severity* of it, has the most significant general deterrent effect. *See, e.g.,* CESARE BECCARIA, ON CRIMES AND PUNISHMENTS AND OTHER WRITINGS 63 (Nathan Bellamy, ed.; Nathan Davis, trans., Cambridge University Press 1995) (1764); Frank H. Easterbrook, *Criminal Procedure as a Market System,* 12 LEGAL STUD. 289, 295 & n.7 (1983); Alfred Blumstein, *Prison, in* CRIME 387, 408-409 (Wilson & Petersilia, eds., 1995); Daniel S. Nagin & Greg Pogarsky, *Integrating Celerity, Impulsivity, and Extralegal Sanction Threats into a Model of General Deterrence: Theory and Evidence,* 39 CRIMINOLOGY 865 (2001); Michael Tonry, *The Functions of Sentencing and Sentencing Reform,* 58 STAN. L. REV. 37, 52-54 (2005); Raymond Paternoster, *How Much do we Really Know about Criminal Deterrence?,* 100 J. CRIM. L. & CRIMINOLOGY 765, 818 (2010) ("The safest conclusion from the literature thus far would be that the perception of certain legal and extralegal sanctions does seem to act as a modest deterrence factor, but that the perceived severity and celerity of punishment do not appear to be effective deterrents to crime, and we know virtually nothing about celerity.").

Moreover, Mr. Ashby's age (both now and at the time of the offense), his maturation since arrest, and his background all suggest he is "aging out" of reoffending. The National Institute of Justice (NIJ) has researched and recognized the "Age-Crime Curve."[2] This curve tells us that offenses which occur earlier in life do not demonstrate a likelihood of future criminal behavior. Generally, according to the NIJ, the prevalence of offending tends to increase from late childhood, reach its peak in the teenage years (from 15 – 19), and then decline in the early 20s. Studies show that 40 to 60 percent of those who become involved in the justice system in their youth stop offending by early adulthood. The Pittsburgh Youth Study found that fifty-two to fifty-seven percent of justice-involved youth continue to offend up to age 25. This number dropped by two-thirds – to sixteen to nineteen percent – in the next five years.[3] Mr. Ashby, who is now 26 years old, is nearly 4 years beyond the date of his underlying offenses and is statistically past end of his age-crime curve. Mr. Ashby is highly unlikely to reoffend, and the public is highly likely to be protected from any crimes of Mr. Ashby.



Figure 1: An example of an age-crime curve
Source: Loeber, Rolf, and Rebecca Stallings, "Modeling the Impact of Interventions on Local Indicators of Offending, Victimization, and Incarceration," in Young Homicide Offenders and Victims: Risk Factors, Prediction, and Prevention from Childhood, eds. Rolf Loeber and David P. Farrington, New York: Springer, 2011: 137-152. (View larger image.)

---

[2] https://nij.ojp.gov/topics/articles/youth-justice-involvement-young-adult-offending

[3] Stouthamer-Loeber, Magda, "Persistence and Desistance in Offending" (unpublished report, Pittsburgh, Pa.: Life History Research Program, University of Pittsburgh, 2010).

> *(4) To provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner.*

Mr. Ashby has already obtained his high school diploma. PSR ¶ 74. He has been steadily employed for over a year and is not in need of medical care. Any education or vocational training he seeks will be more available in the community than in custody.

### C. The Need to Avoid Unwarranted Disparities and Unwarranted Similarities

Not only is § 3553(a)(6) "concern[ed] with disparities resulting from the normal trial and sentencing process," *Pepper v. United States*, 562 U.S. 476, 503 (2011), but its command to avoid unwarranted disparities carries with it "the need to avoid unwarranted *similarities*" as well. *Gall*, 552 U.S. at 55 (emphasis in original). Where, as in this case, a defendant's personal history and background, circumstances under which he committed the offense, acceptance of responsibility and remorse, and post-arrest rehabilitation warrant a lower sentence than may be imposed on a defendant charged with a similar crime, the difference between the sentences is warranted and just. *See Pepper*, 526 U.S. at 510 (Breyer, J., concurring) ("A just legal system seeks not only to treat different cases differently but also to treat like cases alike. Fairness requires sentencing uniformity as well as efforts to recognize relevant sentencing differences.").

### D. The Need to Provide Restitution

Mr. Ashby understands and agrees he must pay restitution in an amount to be determined and ordered by the Court. He does not dispute the total calculated in the PSR, $28,883.64. PSR ¶ 98. Mr. Ashby hopes to continue his current employment so he may pay the restitution he owes as expeditiously as possible.

### E. The Kinds of Sentences Available

The Court has a great deal of flexibility in fashioning a sentence in this case. In addition

to a custodial sentence, the Curt also has at its disposal up to three years of supervised release, and because the offenses are class C and D felonies, Mr. Ashby is eligible for one to five years of probation. PSR ¶ 87, 89.

## IV. CONCLUSION

For all the reasons cited herein, and any which may become apparent to the Court at the sentencing hearing on September 26, 2024, Terrell Ashby respectfully requests the Court vary downward from the advisory guideline range to achieve a sentence which is sufficient, but not greater than necessary, to achieve the statutory goals of 18 U.S.C. § 3553(a).

Respectfully submitted,

*/s/ Michael B. McCrossen*
MICHAEL B. McCROSSEN
Assistant Federal Defender

**CERTIFICATE OF SERVICE**

    I, Michael McCrossen, Assistant Federal Defender, Federal Community Defender Office for the Eastern District of Pennsylvania, hereby certify that I have served a copy of the Defendant's Sentencing Memorandum via Electronic Case Filing ("ECF") notification upon Sarah Wolfe, Assistant United States Attorney, office located at Suite 1250, 615 Chestnut Street, Philadelphia, Pennsylvania 19106.

                                                           */s/ Michael B. McCrossen*
                                                           MICHAEL B. M<sup>c</sup>CROSSEN
                                                           Assistant Federal Defender

DATE:  September 20, 2024