IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| UNITED STATES OF AMERICA      : | |
| v.      : | CRIMINAL NO. 21-203 |
| TERRELL ASHBY,      :<br>    a/k/a "JASON BRANDON" | |

### GOVERNMENT'S SENTENCING MEMORANDUM

**I.      INTRODUCTION**

From at least February to December 2020, defendant Terrell Ashby engaged in an extensive sextortion scheme that wreaked havoc on the lives of more than 100 young female victims. Targeting women based on their social media profiles, he systematically tricked the victims into participating in nude video chats with him or sending him explicit photos of themselves by promising to pay them $70,000. But he did not hold up his end of the deal; instead, he surreptitiously took screenshots during the nude video chats and/or used the explicit images to extort the victims, threating to disseminate the images publicly unless they paid him. Many victims succumbed and paid Ashby anywhere from $25 to $50. But Ashby did not stop there. Even after receiving such extortion payments, he continued to haunt the victims – sometimes for months. He created numerous shaming profiles on social media using the victims' identities and explicit photos. He stalked the victims, repeatedly sending them threatening messages that their "expose" page had been created and would be shared with their friends and contacts – messages like this:

> Just [sent] your nudes to [name redacted]
> Already exposed you whore
> Your life is over
> You're dumb if you thought this was over its not over until my $134 is sent
> I'll make sure our whole school sees your nudes

The victim that received the above message (Victim 1) was so distraught, that she overdosed on her prescription medication and had to be rushed to the emergency room. Fortunately, she recovered from the incident, but was hospitalized for a period of time. During her hospitalization, Ashby continued to harass her, advertising her explicit images to others using various social media accounts. Even months later, Ashby continued his extortion of Victim 1, sending her the following message:

> Remember those pics you sent me and I posted and that facetime I screenrecorded? I'm not stopping until you send what you owe[.] I DM'd 50 people you follow the pics you sent me[.][1]

The defendant's extensive sextortion scheme was a vicious violation of the victims' trust and privacy that caused not only emotional trauma, but damage to the victims' personal relationships, self-images, and potentially future professional reputations. For all of this, he deserves a sentence above the calculated guidelines range.

## II.    BACKGROUND

On December 17, 2020, the defendant was charged by complaint in the Eastern District of Pennsylvania with cyberstalking, in violation of 18 U.S.C. § 2261A(2). On December 18, 2020, Ashby was arrested in the Eastern District of Virginia. On May 13, 2021, the defendant was indicted in a four-count indictment, charging him with two counts of cyberstalking, in violation of 18 U.S.C. § 2261A(2) (one count resulting in serious bodily injury) and two counts of extortion, in violation of 18 U.S.C. § 875(d). On April 18, 2024, he entered a guilty plea to all four charges without a plea agreement, and now awaits sentencing by this Court.

## III.    LEGAL STANDARD

The Third Circuit requires district courts to engage in a "three-step process for

---

[1] "DM" is an abbreviation for sending a direct message on social media.

incorporating adequate consideration of the Guidelines into their sentencing procedures." United States v. Lofink, 564 F.3d 232, 238 (3d Cir. 2009). First, district courts "must continue to calculate a defendant's Guidelines sentence precisely as they would have before Booker. Id. Second, district courts must "formally rule on the motions of both parties and state on the record whether they are granting a departure and how that departure affects the Guidelines calculation, and take into account [the Third Circuit's] pre-Booker case law, which continues to have advisory force." Id. at 237-38. Third, district courts must "exercise their discretion by considering the relevant § 3553(a) factors in setting the sentence they impose regardless of whether it varies from the sentence calculated under the Guidelines." Id. at 238.

IV.     SENTENCING CALCULATION

    A.     Statutory Maximum Sentence

The maximum penalty for a violation of § 2261A(2)(B) is five years pursuant to § 2261(b)(5), or 10 years if serious bodily injury results, pursuant to § 2261(b)(3). "Serious bodily injury" is defined as "bodily injury which involves– (A) a substantial risk of death; …" (§1365(h)(3); see also §§ 2266(6) and 2119(2)). The statutory maximum penalty for the violation of § 875(d) is two years, a $250,000 fine, one year of supervised release, and a $100 special assessment. Accordingly, the defendant faces up to 10 years on Count 1, two years on Count 2, five years on Count 3, and two years on Count 4, for a combined total maximum penalty of 19 years' imprisonment. Additionally, for each count, there may be a $250,000 fine, three years' supervised release, and a $100 special assessment.

    B.     Sentencing Guidelines Calculation

The government agrees with the probation office that the defendant's conduct is grouped with regard to each victim, resulting in the following guidelines calculation. For group 1

3

involving Victim 1, the base offense level is 18 under U.S.S.G. § 2A6.2(a) (PSR ¶ 36); a 4-point enhancement under § 2A6.2(b)(1) applies because the offense involved bodily injury and a pattern of activity involving stalking, threatening, harassing the same victim (PSR ¶37); this results in a subtotal of 22 for group 1 (PSR ¶ 41).  For group 2 involving Victim 2, the base offense level is 18 under U.S.S.G. § 2A6.2 (PSR ¶ 42); a 2-point enhancement under § 2A6.2(b)(1)(E) applies because the offense involved a pattern of activity involving stalking, threatening, harassing the same victim (PSR ¶43); this results in a subtotal of 20 for group 2 (PSR ¶ 47).  The combined offense level for the two groups is 24 (PSR ¶ 51); a 2-point reduction under § 4C1.1(a) and (b) applies based on the defendant meeting the criteria for a Zero-Point Offender (PSR ¶ 52); and a 2-point reduction applies pursuant to U.S.S.G. § 3E1.1(a) based on the defendant's acceptance of responsibility (PSR ¶ 53).  Accordingly, the total offense level is 20 (PSR ¶ 54).  With a criminal history category of I, the defendant's guideline range is 33-41 months (PSR ¶ 85).

## V.     18 U.S.C. § 3553(a) FACTORS

In addition to the guideline analysis above, this Court must also consider all of the sentencing factors set forth in 18 U.S.C. § 3553(a).  Those factors include: (1) the nature and circumstances of the offense and the history and characteristics of the defendant; (2) the need for the sentence imposed to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense; (3) the need to afford adequate deterrence to criminal conduct, and to protect the public from further crimes of the defendant; (4) the need to provide the defendant with educational or vocational training, medical care, or other correctional treatment in the most effective manner; (5) the guidelines and policy statements issued by the Sentencing Commission; (6) the need to avoid unwarranted sentence disparities among

defendants with similar records who have been found guilty of similar conduct; and (7) the need to provide restitution to any victims of the offense.   18 U.S.C. § 3553(a).   As described more fully below, a thorough consideration of all the sentencing factors set forth in 18 U.S.C. § 3553(a) establishes that a sentence above the guideline range is appropriate in this case.

      A.      **The Nature and Circumstances of the Offense and the History and Characteristics of Defendant**

As explained above, this was an extensive sextortion scheme that targeted over 100 victims and stretched at least 10 months.   For Victim 1, the defendant's scheme caused an almost lethal result, as she overdosed on prescription medication and had to be treated for what was deemed a suicide attempt.   The fact that the defendant may not have appreciated the seriousness of his offense has no bearing on the reality that this was in fact a serious offense.   Indeed, the victims' impact statements reveal just how shaken they were by the defendant's criminal conduct.   Some of them are still struggling to recover from the anxiety and emotional trauma he caused.   Beyond this, it is unknown how far and wide the victims' images were distributed.   Once released on the internet, it is impossible to contain these images.   They may resurface at any point, causing the victims future damage as they seek to build new relationships, obtain employment and establish/maintain their reputations.

Moreover, the calculated guidelines range is based only on Ashby's conduct against Victims 1 and 2, the two victims who happened to reside in the Eastern District of Pennsylvania. Therefore, the range does not account for the many other victims who resided outside this district – specifically, the other 12 who were interviewed and confirmed as sextortion victims, as well as the dozens of others who were duped, harassed and/or extorted but did not actually pay any money to Ashby.   Under § 3D1.2(b) of the guidelines, each victim constitutes a separate group, and the combined offense level can be increased up to a maximum of 5 levels per the table in

§ 3D1.4. Accordingly, had more than two victims resided in the EDPA, the grouping analysis would add three more points, resulting in a recommended range of 46-57 months' imprisonment. Taking into account all of his criminal conduct and the substantial harm he caused so many victims across the country, a sentence within this higher range is well warranted in this case.

Turning to the defendant's history and characteristics, the PSR provides that he has no criminal history points. PSR ¶ 57. However, this benefit has already been folded into the guidelines calculation, as the defendant received the 2-point reduction under the zero-point offender provision. PSR ¶ 52. Additionally, the PSR notes that Ashby is facing a separate criminal case in another state for his sextortion and cyberstalking of a minor.[2] PSR ¶ 60. Because that is a separate prosecution, that particular victim is not included in this federal case.

Given the seriousness of the defendant's crime, including the number of victims who were harmed and the extent of that harm, a sentence above the guidelines is appropriate and necessary in this case. Specifically, the government submits that a sentence within the higher range of 46-57 months is warranted.

    **B.**    <u>**The Need for the Sentence Imposed to Reflect the Seriousness of the Offense, to Promote Respect for the Law, and to Provide Just Punishment for the Offense**</u>

As explained above, the defendant's offense caused significant harm to numerous victims and went on for nearly a year. Yet, when speaking with the FBI after his arrest in December 2020, as well as during subsequent reverse proffers with the government, Ashby showed little remorse for his actions. His nonchalant attitude conveys his disregard for the victims, as well as his lack of respect for the law. A significant sentence of incarceration will reflect the seriousness of the defendant's offense, justly punish him for his conduct and promote respect for

---

2 According to the state court docket, that case is still pending and there is a pretrial conference scheduled for October 3, 2024.

the law.

    **C.**    **The Need To Afford Adequate Deterrence To Criminal Conduct, and To Protect the Public from Further Crimes of the Defendant**

Given the defendant's conduct in this case and his failure to grasp the seriousness of his offense, the government submits that there is a substantial need for specific deterrence in this case. The defendant must understand that his conduct has consequences. Moreover, there is also a real need for general deterrence, given how ubiquitous online misbehavior is and how many young women are victimized in similar fashion. A significant sentence above the guidelines range is needed to send a message to would-be offenders that this type of criminal behavior will result in serious punishment.

    **D.**    **The Need To Provide the Defendant With Care in the Most Effective Manner**

The statute provides that sentences should be adjusted in order "to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner." 18 U.S.C. § 3553(a)(2)(D). Given his lack of employment for several years prior to and following his arrest, as well as his lack of any training or education post-high school, the defendant may benefit from the BOP's educational or vocational training. Such training could help him obtain meaningful employment upon release from custody and become a productive member of society.

    **E.**    **The Guidelines and Policy Statements Issued by the Sentencing Commission, the Need to Avoid Unwarranted Sentencing Disparity**

A sentence within the guideline range is typically the best way to avoid unwarranted sentencing disparities among defendants found guilty of similar conduct. However, as explained above, given that the calculated guidelines range does not cover all of the defendant's victims due to venue restrictions, the government is seeking an upward variance. This would

hold the defendant accountable for all of his criminal conduct, beyond just his conduct affecting the victims who happened to reside in this district.

### F. The Need to Provide Restitution to Victims of the Offense

As set forth in the PSR, the government is seeking restitution for the 14 victims who were identified as having sent the defendant extortion payments. PSR ¶ 98. Additionally, the government is seeking restitution for Victim 1's expenses for the medical treatment associated with her hospitalization and ensuing psychological treatment. Based on the information to date, the total amount of restitution is calculated as $28,883.64. PSR ¶ 98.

## VI. CONCLUSION

For all the reasons set forth above, the government submits that an upward variance is appropriate in this case and defendant Terrell Ashby should be sentenced to a term of imprisonment of 46-57 months. The maximum period of supervised release (three years) should also be imposed, along with full restitution.

Respectfully submitted,

JACQUELINE C. ROMERO
UNITED STATES ATTORNEY

/s/ Sarah M. Wolfe
SARAH M. WOLFE
Assistant United States Attorney
Eastern District of Pennsylvania

DATED:   September 20, 2024

## **CERTIFICATE OF SERVICE**

I certify that a copy of the foregoing has been filed electronically and is available for viewing and downloading from the ECF system, and a true and correct copy of the foregoing were served upon counsel for the defendant by email:

> Michael McCrossen, Esq.
> Michael_McCrossen@fd.org

Date:   September 20, 2024

> /s/ Sarah M. Wolfe
> SARAH M. WOLFE
> Assistant United States Attorney